CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
January 30, 2026
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | |
|---|---|
| G.M. b/n/f Stephanie M., | ) |
| Plaintiff, | ) Civil Action No. 7:25cv291 |
| v. | ) |
| SALEM CITY SCHOOL BOARD, | ) By: Hon. Robert S. Ballou |
| | ) United States District Judge |
| Defendant. | ) |

**MEMORANDUM OPINION**

The plaintiff, G.M., a school-age child, by his mother Stephanie M., brings suit against defendant the Salem City School Board, challenging the decision of a special education hearing officer, under the Individuals with Disabilities Education Act ("IDEA"). *See* 20 U.S.C.A. § 1415(i)(2)(A). Currently before me is the School Board's Motion to Exclude Plaintiff's Proposed Additional Evidence and Motion to Dismiss, which plaintiff opposes. Dkt. 20, 37. Both motions are denied.

I.  **Factual Background**

On December 2, 2024, G.M. struck another student during his adaptive P.E. class[1] and, after a special education hearing officer determined that the conduct was not a manifestation of his disabilities and was not a result of the School Board's failure to properly implement his Individualized Education Plan, the School Board suspended him for 45 days. This lawsuit challenges that decision and asks the court for relief. The School Board classifies G.M. as a student eligible for special education services with disabilities of autism and "Other Health

---

[1] According to the Amended Complaint, Adapted Physical Education is physical education that has been modified by providing accommodations or adapted instructional methods or equipment so that it is appropriate for a student with a disability. Dkt. 36 n. 5.

Impairment."[2] Am. Compl. ¶ 6, Dkt. 36. The IDEA requires the School Board to provide disabled schoolchildren, including G.M., with a "free appropriate public education" ("FAPE"). 20 U.S.C.A. § 1412(a)(1)(A). "The IEP—the centerpiece of the statute's education delivery system—serves as the vehicle or means of providing a FAPE." *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 167 (2017) (quotation omitted); 20 U.S.C. § 1414(d)(1)(A). G.M.'s October 24, 2024 IEP, which was in effect at the time of the December 2, 2024 incident, states that G.M.'s:

> disabilities affect his ability to stay on task, follow directions, transition from preferred to non-preferred activities, social skills/interactions with peers, and he requires frequent prompting from adult staff for redirection. [G.M.] will become verbally and physically aggressive towards peers and teachers. He requires prompting and redirection when engaging in a challenging behavior (non-compliance, aggressiveness, and disruptiveness). [G.M.] becomes aggressive when demands are put on him to attend to and complete working, as evidenced by his behavior when taking standardized assessments.

Am. Compl. at ¶ 22; *see also* Dkt. 28 at 157. Regarding his communication needs, the IEP indicates that G.M. "would rather not engage with adults when he becomes frustrated or angered." *Id.*

G.M. alleges the following facts in the Amended Complaint regarding the December 2, 2024 disciplinary incident. Dkt. 36. While playing basketball in his adaptive PE class, a classmate threw a basketball which hit G.M. in the face. G.M. tried to get the attention of an adult he thought was a teacher's aide, but was ignored, so G.M. returned to playing basketball and attempted to tell the classmate to stop hitting him in the head. The same student hit him with the basketball again which G.M. thought it was intentional, and "as a manifestation of his disabilities, G.M. lost control and . . . impulsively struck the other student in the nose." *Id.* ¶ 39. G.M. was taken to the office where he became "dysregulated" and had a "disability related

---

[2] As alleged in the Amended Complaint, G.M. is a "child with a disability" within the meaning of the IDEA, and a "qualified individual with a disability" within the meaning of the Rehabilitation Act and Title II of the Americans with Disabilities Act ("ADA"). Am. Compl. ¶ 6, Dkt. 36.

meltdown" which included allegedly hitting, spitting, and swearing at school staff. *Id.* ¶ 43. Importantly, when a student with a disability violates the student code of conduct, that student cannot be suspended from school for more than 10 school days if:

> (I) the conduct in question was caused by, or had a direct and substantial relationship to, the child's disability; *or*
>
> (II) the conduct in question was the direct result of the local educational agency's failure to implement the IEP.

20 U.S.C. § 1415(k)(1)(i).[3] This determination occurs in a Manifestation Determination Review ("MDR"). In *AW ex rel. Wilson v. Fairfax Cnty. Sch. Bd.*, the Fourth Circuit described the issues the IDEA requires the MDR committee to consider:

> The MDR committee must gather "all relevant information," including any "evaluation or diagnostic results," any "observations of the child," and "the child's IEP and placement." *See* § 1415(k)(4)(C)(i). The MDR committee must then decide whether: (1) "the child's IEP and placement were appropriate and the special education services ... were provided consistent with the child's IEP and placement"; (2) the child's disability impaired his ability to understand "the impact and consequences of the behavior subject to disciplinary action"; and (3) the child's disability impaired his ability "to control the behavior subject to disciplinary action." § 1415(k)(4)(C)(ii).

372 F.3d 674, 684 (4th Cir. 2004). If the behavior was not a manifestation of the child's disability, then the school may suspend the child for more than 10 days, just as it would children without disabilities. 20 U.S.C. § 1415(k)(1)(C). After initially suspending G.M. for ten days, the School Board recommended a 45-day suspension. Dkt. 36 ¶ 46.

---

[3] *But see* 20 U.S.C. § 1415(G) Special Circumstances, providing that school personnel may remove a student to an interim alternative educational setting for not more than 45 school days without regard to whether the behavior is determined to be a manifestation of the child's disability, where a child possesses a weapon or illegal drugs at school, or inflicts serious bodily injury on another person while at school.

On December 4, 2024, the School Board convened an MDR and issued a Prior Written Notice ("PWN") which concluded:

> After reviewing all relevant information in [G.M.'s] file, including, among other things, his IEP, eligibility determination, teacher observations, relevant information in the student's file, and relevant information provided by the student's parent, the MDR team determined that the conduct in question was not a manifestation of [G.M.'s] disability.

*Id.* ¶ 52. This manifestation determination rested on the conclusion that G.M. "was not engaging in a non-preferred activity at the time of the December 2, 2024 incident" and that "the conduct in question was not the direct result of any failure to implement the IEP." *Id.* ¶¶ 53, 54; *see also* Administrative Record at Dkt. 28, 11-13. Unhappy with this result, plaintiff requested an expedited special education due process review hearing ("expedited review hearing"), seeking to reverse the MDR decision, to remove and reduce the 45 day suspension, and to provide compensatory education services. The expedited review hearing occurred on January 15, 2025. Dkt. 36 ¶ 56. The hearing officer ruled for the School Board, with the written decision issued on January 28, 2025. Plaintiff asks the court to review the hearing officer's decision in this action. *Id.* ¶ 64-65.

Plaintiff alleges that the expedited review hearing decision was "based upon an erroneous account of the record," specifically that G.M.'s IEP shows he becomes aggressive "outside the context of transitioning to non-preferred behaviors." Dkt. 36 ¶ 84–91. Primarily, plaintiff contends that G.M.'s disability related aggression appears during a variety of school activities, and not just non-preferred activities. Plaintiff also contends that being hit in the head with a basketball transformed the adaptive PE into a difficult or non-preferred activity. Second, the plaintiff alleges that the hearing officer wrongly decided that school officials properly implemented G.M.'s IEP during the December 2, 2024 incident because the IEP indicates he should receive redirection when he becomes frustrated or when engaging in aggressiveness.

4

Plaintiff alleges that G.M. sought out his adaptive PE teacher after being struck in the head the first time and was ignored, instead of receiving redirection, as his IEP required. *Id.* ¶ 139. Then, in the principal's office, school employees continually questioned G.M., despite his being "clearly upset and dysregulated." *Id.* ¶ 140. Finally, the Amended Complaint alleges that the Hearing Officer improperly excluded the plaintiff's evidence, including medical records, previous IEPs, and failed to follow proper procedures for the hearing.

The Amended Complaint alleges three counts: (1) the School Board failed to conduct an IDEA-compliant MDR for G.M.; (2) the School Board failed to provide an appropriate program of special education services during G.M.'s exclusion from school; (3) the School Board violated § 504 of the Rehabilitation Act and the disability-based discrimination of the ADA. The School Board moves the court to exclude additional evidence offered by the plaintiff, and to dismiss the Amended Complaint.

## II.     The School Board's Motion to Exclude Plaintiff's Proposed Additional Evidence

Plaintiff asks the court to consider certain "proposed additional evidence" not currently in the Administrative Record, pursuant to 20 U.S.C. § 1415(i)(2)(C)(ii). *See* Am. Compl. ¶ 192. Plaintiff "is asking this Court to consider missing evidence that effectively created gaps in the record of G.M.'s expedited due process hearing.[4] *Id.* ¶ 196. The School Board moves to exclude the additional evidence, emphasizing that it is not always appropriate for the court to receive additional evidence, especially when it involves evidence acquired after the administrative hearing. The proposed additional evidence is:

---

[4] The Mother moved to include 22 exhibits at the expedited special education due process hearing, of which 7 were admitted by the hearing officer. Dkt. 36 ¶ 62.

5

    A. G.M.'s IEP developed on or about March 5, 2024.[5]
    B. G.M.'s IEP Amendment dated December 4, 2024.
    C. G.M.'s Salem City School Confidential Psychological Report, December 16, 2024.
    D. G.M.'s Salem City School Functional Behavioral Assessment, December 20, 2024.
    E. The exhibits offered by G.M.'s mother at the expedited due process hearing but rejected by the Hearing Officer.
    F. Appropriate expert testimony to properly contextualize G.M.'s behavior and disability.[6]

Am. Compl. ¶ 201.

The MDR occurred on December 4, 2024 and the expedited review hearing occurred on January 15, 2025. Thus, while some of these items were not available at the MDR hearing, all were available at the expedited review hearing, except for the testimony of the plaintiff's expert, Denise Robinson, who was scheduled to testify at the expedited review hearing, but was unable to come at the last minute due to a personal emergency.

### A. Law & Analysis

The IDEA provides that the district court: "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). However, "district courts have the discretion to tailor their proceedings and to limit the introduction of 'additional evidence' under the IDEA." *Schaffer ex rel. Schaffer v. Weast*, 554 F.3d 470, 475–76 (4th Cir. 2009) (citing *Springer v.*

---

[5] The Amended Complaint indicates that the March 5, 2024 IEP was "intended to cover the end of G.M.'s seventh grade year and the majority of eighth grade." Dkt. 36 ¶ 17. The October 24, 2024 IEP was included in the record at the hearing.

[6] As mentioned at the hearing, this ruling pertains only to plaintiff's expert Denise Robinson, who was expected to testify at the administrative hearing, but was unexpectedly unavailable due to a family emergency. According to the plaintiff, Ms. Robinson provided behavioral support to G.M. during sixth grade, as well as serving as a home care assistant for him. Dkt. 40. It does not apply to any other potential expert witnesses, yet undisclosed.

*Fairfax Cnty. Sch. Bd.*, 134 F.3d 659, 666 (4th Cir. 1998)). This discretionary authority promotes the "role of the administrative hearing as the primary forum in which to resolve disputes regarding IEPs." *Id.* The Fourth Circuit, in adopting the standard for "additional evidence" set out by the First Circuit in *Town of Burlington v. Dep't of Educ.,* held that courts must take a "strict approach to the concept of 'additional evidence.' " *Springer*, 134 F.3d at 666-67. Under this standard, to give "due weight to the administrative proceeding," "additional" means "supplemental"; it does not, for example, "authorize witnesses at trial to repeat or embellish their prior administrative hearing testimony." *Springer*, 134 F.3d at 667 (quoting *Town of Burlington*, 736 F.2d at 790). As set out in *Town of Burlington*:

> the source of the evidence generally will be the administrative hearing record, with some supplementation at trial. The reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing. The starting point for determining what additional evidence should be received, however, is the record of the administrative proceeding.

*Town of Burlington v. Dep't of Educ. for Com. of Mass.,* 736 F.2d 773, 790 (1st Cir. 1984), *aff'd sub nom. Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.,* 471 U.S. 359 (1985)

Although the School Board relies heavily on *Schaffer*, in that case the district court generally permitted the additional evidence, just ultimately determined to give it little weight. The Fourth Circuit wrote:

> [T]he Schaffers failed to convince the district court that their additional evidence should determine the merits of the case. The district court's treatment of the evidence presents a question not of admissibility, but of weight. Indeed, it is difficult to discern what more the district court could have done with the Schaffers' evidence—other than weigh it differently. The Schaffers are therefore arguing beside the point when they insist that their evidence was admissible under the IDEA's broad language, as well as under *Springer* and *Burlington.* The district judge did admit the Schaffers' post-hearing evidence, but he

7

> declined to use that evidence to Monday-morning quarterback the school system. And in doing that, the district court acted well within its discretion.

554 F.3d at 475–76. Likewise, though the School Board writes, "it is fundamentally unfair to ask this Court to reverse a hearing officer's decision about the MDR team's assessment using information that the MDR team never could have reviewed in the first place," they provide no caselaw to support this concept. In IDEA cases, district courts afford "due weight" to the state administrative proceedings. *G.M. by E.P. v. Barnes*, 114 F.4th 323, 333-34 (4th Cir. 2024) (quotation omitted). However, the district court's obligation is to conduct "an independent review, deferring to the hearing officer's 'regularly made' factual findings and ordering substantive or procedural relief as necessary." *Id.* at 330 (citing *Doyle v. Arlington Cnty. Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1991).

To do this, including deciding what factual findings were "regularly made," I must at least review the evidence plaintiff claims the hearing officer improperly excluded. Further, by statute, I am directed to consider additional evidence at a party's request, but must exercise my discretion to control the record to prevent "an unrestricted trial *de novo*." *Schaffer*, 554 F.3d at 476. Here, none of the additional evidence proposed by plaintiff is so repetitive that it should not supplement the administrative hearing record, nor does considering the proposed evidence threaten the role or weight due the administrative proceeding. Of course, what weight I may give any evidence is still to be determined. Accordingly, the School Board's motion to exclude plaintiff's proposed additional evidence is denied.

### III.    Motion to Dismiss

The School Board moves to dismiss the Amended Complaint on multiple grounds: (1) as moot, because G.M.'s suspension has ended and he has returned to school, he "has already received all of the relief" available and there is no live case or controversy; (2) the Hearing

8

Officer's decision was "regularly made" and entitled to deference; (3) G.M. has failed to exhaust his administrative remedies for his claims under the ADA and Rehabilitation Act for compensatory education services, and also fails to state a claim for monetary damages on these claims; and (4) G.M. lacks standing to obtain prospective injunctive relief.

### A.  This case is not moot, even though G.M.'s 45-days suspension has ended.

Federal courts lack jurisdiction when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330, 336 (4th Cir. 2021) (en banc) (citation omitted). Thus, "[i]f intervening factual or legal events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." *Ross v. Reed,* 719 F.2d 689, 693–694 (4th Cir.1983)

In the School Board's view, this case is moot because, even if the court determines that the hearing officer was wrong, returning G.M. to his original placement at school is the only relief available, which has already happened. the School Board's argument rests on its contention that the court is likewise limited to the hearing officer's purported available remedies. However, I am not convinced that the district court is so limited, especially because the IDEA specifically authorizes a reviewing court, after receiving the records of the administrative proceedings and hearing additional evidence, to base its decision on the preponderance of the evidence and "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). The Fourth Circuit has found that "the IDEA confers flexible remedial powers on the ALJ and the reviewing court." *Bouabid v. Charlotte-Mecklenburg Sch. Bd. of Educ.*, 62 F.4th 851, 861 (4th Cir. 2023) (finding "[b]ased on the "backward-looking" character of compensatory education . . . a claim

9

for compensatory education is not rendered moot simply because the student has left the defendant school district").

G.M. seeks compensatory educational services[7] as a remedy for his improper 45-day suspension, which presents a live controversy. The Amended Complaint alleges that the mother sought compensatory educational services at the due process hearing and specifically asks for an award of compensatory educational services. Dkt. 36 ¶¶ 64, 165. Further, the hearing officer's decision notes that plaintiff requested the hearing officer order compensatory education services. Dkt. 28-1, at 192. As plaintiff points out, G.M. could also receive other relief, including expungement of his disciplinary record, policy updates, or teacher training. The School Board's extremely limited characterization of the court's ability to grant relief is not supported by statute or caselaw, which authorizes courts to grant the relief it determines is appropriate.

### B. The Amended Complaint survives a 12(b)(6) Motion

The Fourth Circuit has called federal actions under the IDEA "procedurally unique" because the district court considers the record of the state administrative hearing and new evidence, and makes findings based on the preponderance of the evidence." *Cnty. Sch. Bd. of Henrico Cnty., Virginia v. Z.P. ex rel. R.P.*, 399 F.3d 298, 304–05 (4th Cir. 2005). Even though the federal action is an independent civil action and not an appeal, the district court must still give "due weight" to the state administrative proceeding. *Id.* (internal citations omitted). However, the Fourth Circuit explains that even according "due weight" to the administrative decision does not necessarily require the court to follow that decision, instead:

> We have concluded that the "due weight" to be given the state administrative proceeding requires that findings of fact by the hearing officers in [IDEA] cases ... be considered *prima*

---

[7] "Compensatory education includes provision of educational services necessary to compensate for the education that a child should have received." *Johnson v. Charlotte-Mecklenburg Sch. Bd. of Educ.*, 20 F.4th 835, 840 (4th Cir. 2021).

> *facie* correct, akin to the traditional sense of permitting a result to be based on such fact-finding, but not requiring it.
>
> We are further of opinion that when fact-findings are regularly made and entitled to *prima facie* correctness, the district court, if it is not going to follow them, is required to explain why it does not.... After giving the administrative fact-findings such due weight, if any, the district court then is free to decide the case on the preponderance of the evidence, as required by the statute.

*Id.* quoting *Doyle,* 953 F.2d at 105. Alternatively, factual findings are *not* regularly made, and thus not entitled to due weight, when reached through a process that is "far from the accepted norm of a fact-finding process." *Doyle,* 953 F.2d at 104. For example, an ALJ who made factual determinations by "flipping a coin, throwing a dart, or otherwise abdicating his responsibility to decide the case," obviously would not be entitled to deference. *J.P. ex rel. Peterson v. Cnty. Sch. Bd. of Hanover Cnty., Va.*, 516 F.3d 254, 259 (4th Cir. 2008). The Fourth Circuit has instructed reviewing courts to not begin the "regularly made" inquiry with the ALJ written opinion, but instead to focus on "the *process* through which the findings were made." *Bouabid*, 62 F.4th at 857. At this stage, of course, the motion to dismiss standard also applies, where plaintiff is required only to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

    The School Board argues that, because the plaintiff cannot adequately allege that the hearing officer's decision was not "regularly made," the court must give the decision deference and grant the motion to dismiss. However, I find that plaintiff has adequately alleged sufficient facts supporting the claims that the hearing officer's decision was not regularly made, including the evidentiary decisions, to withstand a motion to dismiss. Further, the plaintiff has provided sufficient facts to support the allegation that G.M.'s conduct was a manifestation of his disability, even after giving "due weight" to the hearing officer's decision. *See Cnty. Sch. Bd. of Henrico Cnty., Virginia,* 399 F.3d at 304–05 (noting "when fact-findings are regularly made and entitled

11

to *prima facie* correctness, the district court, if it is not going to follow them, is required to explain why"). For example, the hearing officer concluded that G.M. was engaging in a preferred activity at the time of the incident, without any explanation of what constitutes a preferred activity, or how the circumstances at the time of the incident qualified as such. Further, the hearing officer determined, likewise with no explanation, that the IEP was correctly implemented. Specifically, G.M.'s IEP requires "prompting and redirection when engaging in challenging behaviors," however the hearing officer provides no explanation of how this occurred.

### C. Plaintiff's Claims were Sufficiently Exhausted and Pleaded

Both the ADA and the Rehabilitation Act authorize individuals to "seek redress for violations by bringing suits for injunctive relief or money damages." *A. J. T. by & through A. T. v. Osseo Area Sch., Indep. Sch. Dist. No. 279*, 605 U.S. 335, 339 (2025) (citation omitted). The School Board contends that the plaintiff's claims for compensatory damages under the ADA and Rehabilitation Act were not sufficiently pleaded. the School Board also argues that plaintiff failed to properly exhaust his claim for compensatory education services, which requires exhaustion under the IDEA, Rehabilitation Act, and the ADA, because it is a relief the IDEA can provide.[8] *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 170 (2017).

To successfully plead an ADA or Rehabilitation Act[9] violation, a plaintiff must show that he: (1) has a disability; (2) was otherwise qualified to get some public program, service, or

---

[8] The parties agree that the plaintiff, when pursuing a claim for monetary damages under the ADA or Rehabilitation Act, is not required to exhaust administrative remedies under the IDEA. Dkt. 42 at 5; Dkt. 41; *Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142, 143 (2023) (noting that the IDEA's exhaustion requirement does not preclude the plaintiff's ADA lawsuit because the relief he seeks–compensatory damages–is not something the IDEA can provide).

activity; and (3) was denied that program, service, or activity on the basis of his disability. *Koon v. North Carolina*, 50 F.4th 398, 405 (4th Cir. 2022) ("The Fourth Circuit treats claims under the Rehabilitation Act and the ADA as the same. They can be 'combined for analytical purposes because the analysis is substantially the same.'") (citation omitted). As clarified recently by the Supreme Court, schoolchildren bringing ADA and Rehabilitation Act claims related to their education are not required to make a heightened showing of "bad faith or gross misjudgment" but instead are subject to the same standards that apply in other disability discrimination contexts, which require a showing of intentional discrimination. *Osseo Area Sch., Indep. Sch. Dist. No. 279*, 605 U.S. at 336. This requirement of intentional discrimination can be satisfied by proof of deliberate indifference – and to show deliberate indifference, the plaintiff must prove the defendant disregarded a strong likelihood that the challenged action would result in a violation of federally protected rights. *Id.* at 345. The Amended Complaint alleges violations of the ADA and Rehabilitation Act related to G.M.'s improperly conducted MDR hearing, his restraint and seclusion in the principal's office which violated the behavior accommodations in his IEP, the School Board's failure to follow his epilepsy plan, and referring him to law enforcement.

To exhaust a claim for a violation of the IDEA, the parent "must first request a due process hearing." *MM ex rel. DM v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 535–36 (4th

---

[9] Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Section 504 of the Rehabilitation Act provides: "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

Cir. 2002)[10] citing 20 U.S.C. § 1415(f); *see also K.I. v. Durham Pub. Sch. Bd. of Educ.*, 54 F.4th 779, 792 (4th Cir. 2022) (holding "the IDEA's exhaustion requirement is not a jurisdictional requirement but a claims-processing rule"). The plaintiff here sufficiently exhausted his compensatory education services claim. At the hearing, the mother sought a reversal of the MDR decision, removal or reduction of the suspension, and compensatory education services. Dkt. 36 ¶ 64. Additionally, in her letter requesting an expedited review hearing, dated December 4, 2024, the mother asked that the hearing officer reduce G.M.'s suspension to 5 days, or remove it from his record, or provide in-person instructional time to make up the time lost while suspended. Dkt. 28 at 4. Further, in her closing argument, the mother specifically asks that G.M. "be returned to the classroom immediately to avoid losing more valuable class time as two hours a week is not sufficient [and] should also be provided compensatory education time to help him catch up on time lost." Dkt. 28, at 195. Finally, the hearing officer's opinion acknowledges that the plaintiff requested compensatory education services. According, I will deny the School Board's motion to dismiss on these grounds.

### D. Standing for Additional Claims for Prospective or Injunctive Relief

The Amended Complaint asks the court to grant injunctive relief, "ordering [the School Board] to reform its policies and procedures for conducting [MDRs]" to prevent "G.M.'s inevitable and likely future harm" and comply with the IDEA and Virginia law. Dkt. 36 at 45. To satisfy the case-or-controversy requirement of Article III of the Constitution, plaintiffs must

---

[10] This case noted three exceptions to the exhaustion requirement, none of which are argued here, "courts have recognized only three narrow exceptions to this exhaustion requirement: (1) when the administrative process would have been futile; (2) when a school board failed to give parents proper notification of their administrative rights; or (3) when administrative exhaustion would have worked severe harm upon a disabled child.

establish standing to sue. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The minimum constitutional requirements for standing require an individual plaintiff to establish: (1) that the plaintiff has sustained an injury in fact; (2) that the injury is traceable to the defendants' actions; and, (3) that the injury likely can be redressed by a favorable judicial decision. *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 396 (4th Cir. 2011) (citing *Lujan*, 504 U.S. at 560-61). A plaintiff seeking injunctive relief must allege a "real and immediate threat" that he will be wronged again. *Bryant v. Cheney*, 924 F.2d 525, 529 (4th Cir. 1991); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 101-03 (1983) (equitable remedy unavailable absent showing of irreparable injury, which requires sufficient likelihood that plaintiff will again be wronged in a similar way).

The School Board dismisses plaintiff's contention that his risk of injury is "impending" due to flawed MDR procedures and the School Board's failure to comply with the IDEA as conclusory. However, I find, at least at this stage, that plaintiff has adequately alleged a real and immediate threat of similar wrong, including that the "inappropriate and unsupported manifestation determination" from the December 2, 2024 incident in his education record adversely affects him – especially because of the frequency of his misbehavior. Dkt. 41 at 27. Plaintiff contends that the court could enjoin the School Board from relying on the December 4, 2024 MDR in the future and order an expungement or modification of his disciplinary history.

## IV.    Conclusion

Accordingly, the School Board's Motion to Exclude Plaintiff's Proposed Additional Evidence

and Motion to Dismiss are denied. An appropriate order accompanies this memorandum opinion.

Entered:  January 30, 2026

*Robert S. Ballou*

Robert S. Ballou
United States District Judge